**MEARS PARK HOLDING CORPORATION, et al.,**
**Appellants,**

v.

**MORSE/DIESEL, INC., et al.,**
**Respondents.**

No. C3-88-88.

Court of Appeals of Minnesota.

June 21, 1988.

Steven C. Schroer, James Duffy O'Connor, Bruce L. Gritters, Faegre & Benson, Minneapolis, for appellants.

Lowell.J. Noteboom, David L. Lillehaug, Michael G. Taylor, Leonard, Street & Deinard, Minneapolis, for respondents.

Heard, considered and decided by CRIPPEN, P.J., and LANSING and SCHULTZ*, JJ.

## OPINION

HAROLD W. SCHULTZ, Acting Judge.

Appellants Mears Park Holding Corporation and Chemical Bank appeal from a judgment entered pursuant to Minn.R.Civ. P. 54.02 in Ramsey County District Court on a trial court's order granting respondent Morse/Diesel $29,663.10 in attorney fees and costs. Appellants allege that the court erred in imposing attorney fees pursuant to Minn.Stat. § 549.21 (1986) and Minn.R.Civ. P. 11, and that the court erred in finding they maintained a position unfounded in fact and law for the purpose of delaying the ordinary course of the proceedings.

## FACTS

Mears Park Development Company (Development) was the developer and part owner of the Galtier Plaza Construction

_____

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

project in downtown St. Paul. Respondent Morse/Diesel was construction manager of the project, and entered into a standard form AIA construction management (CM) contract with Development in 1982. The CM contract contained an arbitration clause which provided:

All claims, disputes and other matters in question between the parties to this Agreement arising out of or relating to this Agreement or the breach thereof may, at the election of either party, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining, but only if such claims, disputes or other matters have not been resolved pursuant to the procedures set forth in Sections 16.19.2(a) and (b) hereof.

The contract also contained a clause binding each of the parties, their successors and assigns to all the covenants of the contract.

On March 16, 1987, Development brought an action in state court against respondent and two other contractors involved in the project claiming, in part, breach of contract, negligence and breach of fiduciary duty. Two weeks later, on March 30, Development terminated respondent as construction manager of the project. The next day, Development assigned its interests in the project to appellant Mears Park Holding Corporation, a wholly-owned subsidiary of appellant Chemical Bank, the project lender.

The state court action was removed to federal district court on April 8, 1987, and on April 10, respondent served a demand for arbitration on appellants to resolve claims respondent had asserted for $250,-000. On April 15, respondent brought a motion to stay the federal action pending arbitration pursuant to the Federal Arbitration Act.

A hearing was held on the motion in federal district court on June 10, 1987. That same day, appellants served respondent with a summons and complaint in Ramsey County District Court, the action at the heart of the present appeal. The claims asserted by appellants in this action were essentially the same as those asserted by Development in the federal action.

The federal district court issued its decision on June 17, 1987, which denied appellants' motion to remand the case to state court and stayed all further proceedings pending arbitration of the matter. Appellant Chemical Bank appealed this decision to the Eighth Circuit Court of Appeals, but withdrew the appeal when respondent later filed a motion for attorney fees in the state action.

Respondent then brought a motion to stay appellants' state court action, commenced June 10, pending arbitration. That motion was heard August 5, 1987, in Ramsey County District Court. The trial court granted respondent's motion, and confirmed its ruling from the bench with an Order and Consolidated Memorandum dated August 20, 1987. The Memorandum included the following findings:

All of the Contracts contained an arbitration clause providing in clear and unmistakable language that all claims and disputes and other matters arising out of the Contracts were to be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. All of the Contracts also contained clear and unmistakable language binding each of the parties and their successors and assigns to all of the covenants of the Contracts, and no Contract was to be assigned without the written consent of the other party. These two provisions of the Contracts frame the issues raised by the moving defendants in their motions.

The trial court found the claims in the federal action and the state action "virtually identical," and concluded "the lawsuit started in this Court was designed to circumvent any ruling of [the federal district judge] which might be adverse to the Mears Park interests."

On September 23, 1987, respondent brought a motion for an order compelling the payment of attorney fees under Minn. Stat. § 549.21 (1986) and Minn.R.Civ.P. 11. The trial court awarded respondent $29,-

663.10 for fees it incurred in the state action. In its order and memorandum filed October 29, 1987, the court stated the decision to commence a second lawsuit against Morse/Diesel and to argue arbitration was not required was

> frivolous and carried on for the sole purpose of avoiding the arbitration which the Federal court had already ordered. There was no merit to its position in Federal court and having lost there, there was even less reason to assert the same position in this court. Vigorous and zealous advocacy cannot disguise an unfounded position.

The court also determined appellants' efforts were "unfounded in fact and in law" and were "asserted for the purpose of delaying the ordinary course of the proceedings." Final judgment was entered January 6, 1988, and this appeal followed.

### ISSUE

Did the trial court abuse its discretion in compelling appellants to pay $29,663.10 in attorney fees under Minn.Stat. § 549.21 (1986) and Minn.R.Civ.P. 11?

### ANALYSIS

#### I. Standard of review

 The trial court awarded respondent attorney fees and costs under Minn. Stat. § 549.21 (1986) providing reimbursement for certain costs in civil actions, and Minn.R.Civ.P. 11, authorizing sanctions in connection with the signing of pleadings, motions and other papers. Section 549.21 provides that upon the motion of a party,

> the court *in its discretion* may award to that party costs, disbursements, reasonable attorney fees * * * if the [opposing] party * * * acted in bad faith; asserted a claim or defense that is frivolous and that is costly to the other party; asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass; or committed a fraud upon the court.

Minn.Stat. § 549.21, subd. 2 (1986) (emphasis added). Case law has clearly delineated an abuse of discretion standard of review for cases falling under this provision of the statute. *See Blattner v. Forster*, 322 N.W. 2d 319, 321 (Minn.1982); *National Recruiters, Inc. v. Toro Co.*, 343 N.W.2d 704, 709 (Minn.Ct.App.1984). There is, however, no established standard of review for Rule 11 cases in Minnesota.

Federal Rule of Civil Procedure 11 was amended in 1983 in response to growing concern over the abuse and misuse of the litigation process. The federal and Minnesota rule provide that if a paper is signed in violation of the rule, i.e. without determining that the position advanced in the pleadings is sound,

> the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include * * * the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11; Minn.R.Civ.P. 11.

Unlike Minn.Stat. § 549.21, the rule itself does not suggest a standard of review, and courts are divided on whether that standard should be a "clearly erroneous," "de novo," or an "abuse of discretion" standard. In the 1987 Fifth Circuit case *Robinson v. National Cash Register Co.*, 808 F.2d 1119 (5th Cir.1987), the court used a three-tiered standard of review. Findings of fact used by the trial court to determine whether Rule 11 had been violated were reviewed under a clearly erroneous standard. The court's legal conclusion that a particular set of facts constituted a violation of Rule 11 was reviewed de novo. Then the type and amount of the sanction imposed was examined under an abuse of discretion standard. *Id.* at 1125–27.

After surveying the standard of review used by other circuits, however, the Fifth Circuit adopted an "across-the-board" abuse of discretion standard for its own determination of Rule 11 sanctions. In *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir.1988), the court explained:

[T]he imposition or denial of sanctions of necessity involves a fact-intensive inquiry into the circumstances surrounding the activity alleged to be in violation of Rule 11. The perspective of a district court is singular. The trial judge is in the best position to review the factual circumstances and render an informed judgment as he is intimately involved with the case, the litigants, and the attorneys on a daily basis.

*Id.* at 873. The court concluded:

[T]he complexity of the three-tiered standard creates additional work for district courts and additional issues for appeal. The abuse of discretion standard is preferable.

*Id.* (quoting C. Shaffer, Jr. & P. Sandler, *Sanctions: Rule 11 and Other Powers* 28–29 (2d ed. 1987)).

We concur with the reasoning of the Fifth Circuit. Deference must be given to a trial court's efforts to regulate the courtroom and perception of whether the litigation process has been abused. An abuse of discretion standard leaves the factual inquiry and eventual determination as to whether a party has violated Rule 11 to the trial court.

A discretionary standard of review for Rule 11 cases also corresponds with Minnesota's abuse of discretion standard for an award of attorney fees under Minn.Stat. § 549.21. We therefore adopt the abuse of discretion standard of review for cases under Minn.R.Civ.P. 11.

### II. Imposition of Sanctions

At trial, appellants denied they were parties to the arbitration agreement found in the CM contract, and argued they should not be bound by the federal district court order staying all other proceedings pending arbitration. Appellants claim it was error for the trial court to find their position unfounded in fact and law, and to conclude the state action was brought in order to circumvent the ruling of the federal district court. Appellants argue that actions by their trial counsel constituted zealous advocacy, and that it was an abuse of discretion for the trial court to impose nearly $30,000 in attorney fees and costs.

They allege there had been no sanctionable conduct in appellants' opposition to respondent's motion to stay the state proceedings pending arbitration.

The trial court explicitly found, however, the construction management agreement

contained an arbitration clause, providing in clear and unmistakable language that all claims and disputes and other matters arising out of the contract were to be decided by arbitration * * *. It also contained clear and unmistakable language binding each of the parties and their successors and assigns to all of the covenants of the contract.

Whether appellants were bound to the arbitration clause was a question of fact for the trial court to consider. The trial court based its decision on the arguments of counsel and a review of "the extensive briefs and supporting documents filed in connection with [the] motion." The court did not fail to consider any issue under debate. Therefore, there is no basis for appellants' claim that the trial court abused its discretion in this matter. While appellants may be unhappy with the trial court's decision, it is not the place of this court to review the facts and decide the issues anew. As respondent points out, just as an award of attorney fees is permissible when a plaintiff's cause of action is foreclosed by clear statutory language, so may a trial court award fees when a cause of action is foreclosed by clear language of the relevant contract. *Blattner,* 322 N.W.2d at 321. The trial court properly awarded fees when it found appellants' position to be meritless.

Appellants next contend their purpose for bringing the state action was to consolidate appellants' outstanding claims against respondent and other contractors from the Galtier project, and in so doing "promote justice." The trial court found to the contrary, that appellants used the state action to vigorously assert a position which was unfounded in fact and in law, and that they initiated the action "for the purpose of delaying the ordinary course of the proceedings and, more specifically, to circumvent the ruling of the [federal district

judge] directing arbitration and staying all proceedings in a companion action." In addition, the trial court emphasized the fact that in this second lawsuit, "it was the same plaintiffs pursuing the same claims and resisting the same arbitration which had been determined against them in Federal court; they pursued a position before this court which a Federal court had already determined to be unfounded."

We agree with the trial court's conclusion that such conduct cannot be seen as anything more than frivolous. It is harassment to pursue the same unfounded claims in different forums, and such harassment clearly calls for both statutory and Rule 11 sanctions.

Appellants base their argument that they are not bound by either the federal ruling or the contract containing the arbitration clause on the Minnesota case *Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.*, 308 Minn. 20, 240 N.W.2d 551 (1976), and the United States Supreme Court case *Perry v. Thomas*, — U.S. —, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). They interpret the cases to hold that a court may stay arbitration in favor of litigation, and contend that their assertion of this interpretation should not be sanctioned when they are advancing "a claim or defense unwarranted under existing law [but] supported by a good faith argument for an extension * * * of the existing law." Minn.Stat. § 549.21, subd. 2.

The trial court found appellants' claim "did not come within the purview of the exception [of the statute or Rule 11] which permits a good faith argument for a modification or reversal of existing law." The court determined "a stay of litigation must be granted under section 3 of the Federal Arbitration Act because that Act governs this court as well as the federal courts." It found appellants' emphasis on *Prestressed Concrete* "totally unjustified and completely misplaced."

We agree there is no valid legal basis for appellants' position. Not only was *Prestressed Concrete* decided before the Federal Arbitration Act was adopted, but its holding giving a state court discretion to stay arbitration under state law was challenged by the later Minnesota case, *Fairview Cemetary Association of Stillwater v. Eckberg*, 385 N.W.2d 812 (Minn.1986). There, the supreme court expressly stated "[b]ecause Congress has evidenced a preference for arbitration, this preference should override state interest in requiring litigation * * *." *Id.* at 816.

*Perry* quite clearly describes the federal policy which requires arbitration unless the agreement to arbitrate is not part of the contract, and which calls for enforcement without additional limitations under state law. *Perry*, — U.S. at —, 107 S.Ct. at 2525. Appellants claim the language of footnote 9 in *Perry* indicates Supreme Court recognition of certain state law exceptions to the federal act. We read that note to be inapplicable to the present situation in which appellants are clearly bound to arbitration by virtue of a valid contract.

Although vigorously advocated, appellants' reading of the cases cannot be upheld. We agree with the trial court's conclusion that appellants advanced a position unfounded in fact and law, and find no abuse of discretion in the court's imposition of sanctions for appellants' violation of the statute and Rule 11.

Appellants' final allegation is that even if the court finds its position untenable, it is an abuse of the trial court's discretion to impose attorney fees and costs amounting to nearly $30,000.

We agree with respondent that much research and investigation can go into refuting even the most frivolous claim, and also note the trial court reduced the award of attorney fees to 56% of the requested compensation. We find that when sanctions may be punitive as well as compensatory in nature, $29,663.10 is not an exhorbitant award in this case. *See Thomas*, 836 F.2d at 879 ("[w]hat constitutes 'reasonable expenses' and a 'reasonable attorney's fee' within the context of Rule 11 must be considered in tandem with the rule's goals of deterrence, punishment, and compensation. In this respect, we note 'reasonable' does not necessarily mean actual expenses"). As long as the record reflects a

reasonable correlation between the final amount of the sanctions imposed, the expenses incurred by the party defending the unfounded claims, and the basis of the court's imposition of sanctions, there will be no abuse of discretion by the trial court.

## DECISION

The trial court did not abuse its discretion in awarding respondent $29,663.10 in attorney fees for litigation found to be duplicative, frivolous, unfounded in fact and law and asserted only to delay the ordinary course of the proceedings.

Affirmed.