**PACKER RIVER TERMINAL, INC., Appellant,**

v.

**CITY OF MINNEAPOLIS, Respondent.**

**No. C1-89-827.**

Court of Appeals of Minnesota.

Sept. 12, 1989.

Review Denied Nov. 15, 1989.

Roger J. Magnuson and David Y. Trevor, Dorsey & Whitney, Minneapolis, for appellant.

George F. McGunnigle, Jr. and Douglas B. Greenswag, Leonard, Street & Deinard, and Jerome F. Fitzgerald, Asst. City Atty., Minneapolis, for respondent.

Heard, considered and decided by KALITOWSKI, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

Packer River Terminal petitioned the trial court to compel arbitration of its dispute with the City of Minneapolis regarding the terms of an operating agreement. Packer River Terminal appeals the denial of its motion to compel. We reverse.

## FACTS

On June 10, 1983, the City of Minneapolis entered into an agreement whereby Packer River Terminal, Inc. (Packer River), would operate the Upper Harbor Terminal owned by the city and located on the Mississippi River. Under the agreement, Packer River receives revenues from customers using the shipping facilities and in turn pays the city a percentage of those gross revenues.

Section 11.07(a) of the Operating Agreement provides that when a 'disability' diminishes the net income of Packer River for an "appreciable period of time," the payments to the city may be reduced according to the net income loss incurred.

The agreement defines a disability as resulting from "an act of God or other cause or event not within the control of the operator." Operating Agreement Section 11.-06(a). Finally, section 11.07(b) discusses how the parties are to reach a determination of the amount of any such reduction in payments:

In the event of disability within the meaning of Section 11.06(a) * * * the Operator shall present the City with a statement of its financial loss and an explanation of the manner of calculation. If the Operator and the City are unable within 120 days thereafter to agree as to the extent of such financial loss, such dispute shall be submitted to binding arbitration under the provisions of the Minnesota Uniform Arbitration Act and the rules of the American Arbitration Association.

In September 1988 Packer River advised the city that the 1988 drought reduced its income by aproximately $565,000. The company notified the city that it intended to reduce its payments to the city by an amount equal to that estimated loss and, at the same time, sought a declaratory judgment that the drought caused a reduction in its net income. The city, admitting that the drought was an act of God, disputed Packer River's claim that it caused a net income reduction or that Packer River was entitled to withhold payments to the city. The city filed a counterclaim alleging that Packer River had breached the agreement.

Packer River then filed a motion to compel submission of the dispute to binding arbitration. The trial court denied the motion, stating that the arbitration clause covered only the amount of Packer River's net income loss. Issues of contract interpretation and factual causation of the income reduction, according to the court, compelled it to deny the motion to compel arbitration, as they were held to be beyond the scope of the agreement's arbitration clause. Packer River appeals the trial court decision.

## ISSUE

Did the trial court err in refusing to compel arbitration of a dispute which the court found encompassed issues beyond the terms of the arbitration agreement?

## DISCUSSION

On review this court must independently determine whether the proper interpretation was given to the language used by the parties. *Millwrights Local 548 v. Pugleasa Co.*, 419 N.W.2d 105, 107 (Minn.Ct.App. 1988).

The language in section 11.07(a) and (b) explains the procedure to be used in the event of a disability which causes the operator, Packer River, to suffer a reduction in its net income. Section 11.07(b) sets out that the parties are to try to agree on an amount of such loss and, if unable to do so, submit their dispute to binding arbitration.

In *Layne-Minnesota Co. v. Regents of the University of Minnesota*, 266 Minn. 284, 123 N.W.2d 371 (1963), the supreme court held:

Where the parties are in conflict as to the scope of the provision for arbitration, and the question of the parties' intentions as to such scope is reasonably debatable * * * we hold, that the issue of arbitrability be initially determined by the arbitrators subject to a party's right * * * to challenge such determination subsequent to such award.

*Id.* at 291, 123 N.W.2d at 376–77.

Here the two parties disagree as to the coverage of the arbitration clause in the agreement between them. *Layne Minnesota* is directly on point and we follow the supreme court's holding here. The parties should first submit to binding arbitration the question of arbitrability and determine the issues found to be arbitrable before bringing the matter to court.

The city cites *Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.*, 308 Minn. 20, 240 N.W.2d 551 (Minn.1976), for the proposition that the trial court had discretion to deny the motion to compel arbitration of a specific issue that definitely fell within the arbitration clause. The city's reliance on *Prestressed Concrete* is misplaced. In that case two of five parties in a lawsuit had an arbitration agreement with each other.

The arbitrable dispute between the two parties hinged upon the resolution of disputes among the other parties by litigation. There the supreme court found that

> where arbitration would increase rather than decrease delay, complexity, and costs, it should not receive favored treatment.

*Id.* 240 N.W.2d at 553. In this case, with only two parties, the concerns expressed in *Prestressed Concrete* are not present.[1]

The city contends the arbitration clause covers only the *extent* of financial loss and not the *causation.* In denying the motion to compel arbitration, the trial court stated that the issues of factual causation of Packer River's loss of income plus issues of contract interpretation mandated that the court deny the motion to compel arbitration. However, prior to stating that conclusion, the trial court noted that the contract provided that if the parties could not "agree as to the extent of financial loss *caused by* an Act of God" (emphasis added), then the dispute had to be arbitrated.

The trial court was correct in its initial interpretation of the arbitration clause and erred in its final conclusion. Under this contract, the issues of causation and extent of the financial loss suffered by Packer River are inseparable, because only those losses attributable to ("in the event of") a "disability" are to be presented. Section 11.07(b) then provides that if the parties are unable to agree as to the extent of *such* financial loss, *such* dispute shall be submitted to binding arbitration. We hold this language to present at least a reasonably debatable argument that the questions of causation and necessary contract interpretation are within the scope of the arbitration clause and hence must be submitted first to the arbitrators.

The city also notes that certain issues raised in its counterclaim cannot be covered under the arbitration agreement and will have to be resolved in the courts. Assuming, without deciding, this fact to be true, it is no bar to arbitration. If this were so, one could nullify an arbitration agreement merely by raising non-arbitrable counterclaims. These counterclaims would not negate the fact (if the arbitrators so decide) that the principal issues of causation and extent of financial loss suffered by Packer River are arbitrable. Resolution of those issues by an arbitration panel will make easier the task of the court in resolving any remaining areas of dispute between the parties.

## DECISION

The trial court erred in denying appellant's motion to compel arbitration. It is reasonably debatable that issues such as causation and contract interpretation necessary to determine financial loss are within the scope of the arbitration clause; the issue of arbitrability is to be decided, as a threshold issue, by the arbitrators. The parties are ordered to proceed to arbitration.

Reversed.

---

1. This court, in *Mears Park Holding Corp. v. Morse/Diesel,* 426 N.W.2d 214 (Minn.Ct.App. 1988), noted that the contention there, based on *Prestressed Concrete,* that a court "may stay arbitration in favor of litigation" had "no valid legal basis." *Id.* 426 N.W.2d at 219.