Sᴛᴀᴛᴇ of Wisconsin,
Plaintiff-Respondent,†

v.

Carmen L. Doss,
Defendant-Appellant.†

Court of Appeals

*No. 2006AP2254–CR. Submitted on briefs June 5, 2007.
—Decided August 7, 2007.*

2007 WI App 208

(Also reported in 740 N.W.2d 410.)

† Petition to review granted 11/5/07.

415

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert R. Henak* of *Henak Law Office, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen,* attorney general, and *William L. Gansner,* assistant attorney general.

Before Wedemeyer, Fine and Kessler, JJ.

¶ 1. WEDEMEYER, J. Carmen L. Doss appeals from a final judgment of conviction after a jury found her guilty of the unlawful retention by a trustee or bailee of more than $10,000 in violation of WIS. STAT. § 943.20(1)(b) and (3)(c) (2003–04).[1] She also appeals from an order denying her postconviction motion for a new trial for, among other reasons, a violation of her constitutional rights to confront the witnesses against her, contrary to the Sixth Amendment of the United States Constitution and the Wisconsin Constitution, article I, section 7. Because a statutory requirement contained in WIS. STAT. § 891.24 was not fulfilled, because "testimonial hearsay" was admitted contrary to the dictates of *Crawford v. Washington*, 541 U.S. 36 (2004), and because these errors were not harmless, we reverse the judgment and order.

### BACKGROUND

¶ 2. On October 13, 2005, a jury found Doss guilty of unlawful retention by a trustee of more than $10,000 of estate funds on or about October 31, 2004, in violation of WIS. STAT. § 943.20(1)(b) and (3)(c), based upon a probate court's order to return the same. We briefly recount the sequence of events leading to the jury's verdict.

¶ 3. The father of Doss, Donald, died on August 14, 2003. At the time of his intestate death, he lived at 8049 West Custer Avenue in Milwaukee, Wisconsin. Doss was a resident of the State of Georgia at the time. Because she was a resident of Georgia, she retained a Milwaukee attorney, Diane Loftus, to assist her in the probate of her father's estate. Both Doss and Loftus

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

were named as co-personal representatives. The Ohio Casualty Insurance Company issued a bond in the amount of $52,000 assuring the faithful performance of the fiduciaries.

¶ 4. The estate had assets in Wisconsin of about $72,000. These assets were deposited in the M&I Bank under the joint control of Doss and Loftus. In September 2003, in the process of closing the estate proceedings, Loftus learned that the deceased Mr. Doss had failed to pay state income taxes for the last eight years of his life. As a result, the State Department of Revenue (DOR) would not issue a "Closing Certificate" enabling the final distribution of the assets of the estate. Doss claimed her father was not a resident of the State of Wisconsin; thus she denied any tax liability. Loftus, to the contrary, believed that the estate owed the taxes and she, as co-personal representative, was obligated to make sure the taxes were paid. In fact, on February 6, 2004, she filed the tax return and forwarded a check for $39,865 to the DOR. In the meantime, on February 19, 2004, Doss contacted the revenue agent in charge of the audit and persuaded her to hold the check and not cash it. On the next day, February 20, 2004, Doss withdrew all the money in the M&I account, which was $70,555.47. When the revenue agent submitted the check for cashing, it was returned because the account had been closed. On March 1, 2004, Doss opened an account in the name of the Estate of Donald Doss at the SunTrust Bank of Atlanta, Georgia, and deposited the M&I cashier's check in that account.

¶ 5. On March 3, 2004, the DOR wrote to Loftus and Doss formally concluding that the estate owed income taxes to the State. On March 25, the probate court granted Loftus's request to withdraw as co-

personal representative. The court did not address Loftus's request to order Doss to return the funds.

¶ 6. According to bank records, two checks were drawn on the SunTrust estate account: a $5,000 check to a Kimberly Cunningham for "federal taxes and travel expenses" and a $65,000 check to Doss for "inheritance." The check to Doss was then deposited into another SunTrust account on March 15, 2004, in the name of Doss and her mother, where it was co-mingled with other funds. The entire amount was then transferred to a SunTrust money market account in the same names. Various small withdrawals were made over the next six-month period. On September 15, 2004, the account was finally closed out and the balance of $52,778.84 was withdrawn over the signature of Carmen Doss.

¶ 7. Earlier, on August 23, 2004, the DOR filed a separate action against Doss and Ohio Casualty seeking payment it claimed was owed by the estate. On September 27, 2004, Ohio Casualty filed a motion in the probate case for an order that Doss surrender the funds to the court. At an October 7th hearing, Doss appeared *pro se* by telephone, and stated that she no longer had the funds. The probate court, however, ordered her to pay $70,555.47 to the clerk of courts. Doss has failed to do so.

¶ 8. On November 23, 2004, the State filed a complaint charging Doss with one count of theft as trustee/bailee in a business setting, contrary to Wis. Stat. § 943.20(1)(b) and (3)(c). Doss pled not guilty and the case was presented to a jury. The jury convicted Doss and she was sentenced to six years of imprisonment, consisting of one year of initial confinement followed by five years of extended supervision, and ordered to pay restitution. Doss's postconviction motion was denied. She now appeals.

## ANALYSIS

¶ 9. The pivotal issue in this criminal appeal is whether the trial court erred when, over the objection by Doss, it allowed into evidence her certified bank records. Doss objected to the admission of the bank records on hearsay and confrontation grounds.

### STANDARD OF REVIEW AND APPLICATION OF LAW

¶ 10. When reviewing a trial court's ruling regarding the admissibility of evidence, we use the erroneous exercise of discretion rubric. *State v. Franklin*, 2004 WI 38, ¶ 6, 270 Wis. 2d 271, 677 N.W.2d 276. In evidentiary matters, we will not reverse an erroneous exercise of discretion ruling unless it is prejudicial to the adverse party. *Id.*, ¶ 23. Whether the admission of evidence violates an accused's right to confrontation is a question of law, subject to our independent review. *State v. Williams*, 2002 WI 58, ¶ 7, 253 Wis. 2d 99, 644 N.W.2d 919.

¶ 11. The Sixth Amendment of the United States Constitution declares that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Similarly, article I, section 7 of the Wisconsin Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to meet the witnesses face to face . . . ." Wisconsin courts will generally apply United States Supreme Court precedents when interpreting our confrontation clause. *State v. Hale*, 2005 WI 7, ¶ 43, 277 Wis. 2d 593, 691 N.W.2d 637.

¶ 12. In *Crawford*, the United States Supreme Court concluded that "[w]here testimonial evidence is

at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. at 68. Otherwise, non-testimonial hearsay is still governed by *Ohio v. Roberts*, 448 U.S. 56 (1980). *State v. Manuel*, 2005 WI 75, ¶¶ 57–60, 281 Wis. 2d 554, 697 N.W.2d 811.

¶ 13. Doss claims that her constitutional rights to confrontation were violated because the rubrics of *Crawford* for the admission of testimonial evidence were not followed. The *Crawford* decision provoked a change in the methodology to be employed for determining confrontation violations when admitting hearsay evidence. The decision did not define "testimonial" with any exactitude, but it did describe the term "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.*, 541 U.S. at 51 (quoting 2 N. Webster, An American Dictionary of the English Language (1828)). Stated otherwise, it is hearsay evidence that is relevant and fact determinative. The *Crawford* court then set forth three "formulations of th[e] core class of 'testimonial' statements:"

> *ex parte* in-court testimony or its functional equivalent —that is, material such as affidavits, custodial examinations prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions . . .; [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51–52 (internal citations omitted). Wisconsin has adopted these three formulations. *Manuel*, 281 Wis. 2d 554, ¶ 39.

¶ 14. The State, in offering the certified records of the M&I Bank and the SunTrust Bank to prove the transfer of funds from one bank to the other and the subsequent total withdrawal, relied upon WIS. STAT. § 891.24. For the State to properly admit the bank records, the admission had to pass muster on two counts: statutory and constitutional. We first examine the statutory requirements.

WISCONSIN STAT. § 891.24, in relevant part reads as follows:

> Whenever any bank . . . or any of its officers are sub-poenaed to produce its books containing a specified account or other specified entries, the bank . . . may, if it so elects, produce a copy of the specified account or other entries, verified under oath by one of its officers, stating that the books called for are the ordinary books of the bank . . . used in the transaction of its business, that the entries copied were made therein at the dates thereof and in the usual course of business, that there are no interlineations or erasures in or among the items copied, that the books are in the custody or control of the bank . . ., and that the officer has carefully com-pared the copy with the books and found it to be a correct copy of the specified account or entries. Such verified copy shall be prima facie evidence of such entries, and, when presented, no officer of the financial institution may be compelled to produce the books demanded or attend the trial or hearing, unless spe-cially ordered so to do by the court or officer before whom it is pending; provided, that such books shall be open to the inspection of all parties to the action or proceeding.

¶ 15. Reasonably read, Wis. Stat. § 891.24 states that a bank's record books of a particular account need not be produced for a trial if two conditions are fulfilled: (1) a sworn verification is provided attesting to the factual truth of the copied account entries presented, and (2) the original records are open for the inspection of all parties to the action.

## Statutory Requirement Applications

¶ 16. Because the impact of the *Crawford* decision requires more extensive delineation, we first address the "open for inspection" requirement. The State asserts that copies of the bank records were sent to Doss's counsel on September 29th. But the State does not dispute that it failed to notify Doss's counsel until the Friday before the Monday, October 10, 2005 trial of its intent to submit the M&I and SunTrust records without supporting witnesses.

¶ 17. The State is correct in pointing out that there is no special requirement under Wis. Stat. § 891.24 that a party give notice of intent to rely on the provisions of the statute in advance of trial. Regardless, reasonableness and common sense are not to be heedlessly cast aside.[2] As for this second requirement, it can only reasonably be implied that the occasion for any inspection of the original records be fairly afforded; otherwise, the additional requirement for open inspection is meaningless, an unintended consequence to be avoided in statutory construction. *See Liles v. Employers Mut. Ins. of Wausau*, 126 Wis. 2d 492, 503, 377

---

[2] "Today, the trouble with common sense is that it is no longer common." G.K. Chesterton (1874–1936).

N.W.2d 214 (Ct. App. 1985). There can be no gainsaying that the window of opportunity for a fair inspection in this instance was diminutive at best. The State may regard this requirement as a bothersome exercise, "elevat[ing] form into the stratosphere over substance," but the dictates of § 891.24 must be met. We cannot turn our backs on the clear language of the statute. In our judgment, the State did not comply with the statute.

### CONFRONTATION REQUIREMENT APPLICATION

■

¶ 18. Next, we examine the confrontational consequences of the *Crawford* decision as applied to the facts relating to the admission of the bank records. The bank records are one form of hearsay whose inadmissibility can be excepted by WIS. STAT. § 908.03(6). The statements of verification of those records, however, create a second tier of hearsay that can strike at the very heart of confrontation protection. The affidavits of verification filed on behalf of the M&I Bank and the SunTrust Bank are out-of-court statements offered for the truth of the facts asserted within the affidavits, i.e., that the attached records are authentic and constitute the business records of the bank. Because the statements contained in each affidavit attest to the truth of certain facts under oath, such statements are testimonial.

¶ 19. Doubtless, the verifications set forth in the affidavits submitted by the bank officers satisfy the formulations set forth in *Crawford*. They are "extrajudicial statements . . . contained in formalized testimonial materials" in affidavit form. They are "pretrial statements that [the] declarants would reasonably ex-

pect to be used 'prosecutorially' and they are "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial." *Id.*, 541 U.S. at 51–52 (citations omitted).

¶ 20. Given their testimonial nature, *Crawford* allows the admissibility of the records only if the declarant is unavailable and the adverse party was given a fair opportunity to cross-examine the witness. *Id.* at 59. From our search of the record we can ascertain no evidence to demonstrate that the declarants of the affidavits were unavailable, nor that Doss was presented with a reasonable opportunity to cross-examine either witness-affiant from the M&I or the SunTrust banks. To the contrary, the State concedes it could have brought a live witness from M&I, but did not. As for providing a witness from SunTrust, the State admitted it was not prepared to do so. Thus, no basis has been shown to support a finding of unavailability. Because the standard for admitting testimonial evidence has not been satisfied, admitting the records violated Doss's constitutional confrontation rights. Therefore, admitting the records was erroneous.

### Harmless Error Application

¶ 21. Last, a determination that the right to confrontation has been violated, " 'does not result in an automatic reversal, but rather is subject to harmless error analysis.' " *State v. Weed*, 2003 WI 85, ¶ 28, 263 Wis. 2d 434, 666 N.W.2d 485 (quoting *Williams*, 256 Wis. 2d 56, ¶ 2). The test for a harmless error conclusion is whether a court " 'must be able to declare a belief

427

that it was harmless beyond a reasonable doubt.' " *State v. Hale*, 2005 WI 7, ¶ 60, 277 Wis. 2d 593, 691 N.W.2d 637 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). That is to say, "an error is harmless if the beneficiary of the error proves 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Id.*

¶ 22. From a review of the record, as we have already noted, when the question of whether any custodians were to be presented from either M&I or SunTrust, the State replied it could present a custodial witness, but it did not, nor did the State ask for an adjournment to do so. Furthermore, the State expressed the intent that it was not prepared to present a custodial witness from SunTrust. At that point, the trial court asked the State if it needed the bank records in evidence to prove its case, and the State answered "they're essential,. yes." In addressing this issue, little more need be stated. The State cannot meet its burden of proving that the error in admitting those records was harmless beyond a reasonable doubt. Authenticating records that are "essential" to the prosecution, cannot also be harmless error.[3]

---

[3] Doss raises six additional issues: (1) the trial court should have granted her motion for a mistrial; (2) the trial court erred in admitting evidence of the DOR's lawsuit because there was no evidence that Doss was aware of the lawsuit; (3) the State violated Doss's constitutional right to remain silent when it relied on Doss's failure to testify; (4) reversal is appropriate in the interest of justice; and (5) she received ineffective assistance of counsel. Based on our disposition, it is not necessary for us to address these additional claims. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

### INSUFFICIENCY OF THE EVIDENCE

¶ 23. Doss asserts that the evidence was insufficient to sustain the conviction. We are required to address this issue based on our disposition of this case. *See State v. Ivy*, 119 Wis. 2d 591, 607–10, 350 N.W.2d 622 (1984) (appellate court must address sufficiency of the evidence issue when reversing on other grounds for purposes of double jeopardy).

▮▮▮▮▮▮

¶ 24. This court may not reverse a conviction "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). If any possibility exists that the jury could have drawn the appropriate inferences from the trial evidence to find guilt, this court may not overturn the verdict. *Id.* at 507. Furthermore, "[a] criminal conviction can be based in whole or in part upon circumstantial evidence. Circumstantial evidence is often more probative than direct evidence, and it is clear that circumstantial evidence alone may be sufficient to convict." *State v. Pankow*, 144 Wis. 2d 23, 30, 422 N.W.2d 913 (Ct. App. 1988) (citations omitted). When considering sufficiency of the evidence, courts must consider all evidence submitted, including evidence erroneously admitted. See *Lockhart v. Nelson*, 488 U.S. 33, 40–42 (1988).

¶ 25. Here, Doss was convicted of unlawful retention in violation of WIS. STAT. § 943.20(1)(b) and (3)(c). The elements of unlawful retention required proof that: (1) Doss had possession of money due to her position as a personal representative of her father's

estate; (2) she intentionally retained possession of the money contrary to her authority and without the owner's consent; (3) she knew that retention of the money was contrary to her authority and without the owner's consent; and (4) that she intended to convert the money to her own use.

¶ 26. Doss argues that the evidence is insufficient because the State failed to prove that she still had the funds on October 31, 2004. We are not convinced. As noted above, the evidence must be reviewed in a light most favorable to conviction and all evidence, including that which was erroneously admitted, must be considered. In light of this standard, we cannot conclude that the evidence was insufficient.

¶ 27. There was evidence in the record from which a jury could reasonably infer all the elements of the crime charged. Doss withdrew all of the money from the M&I estate account and opened a Suntrust account with the estate money. The record reflects that Doss withdrew the funds from the Suntrust account on September 15, 2004. In October 2004, the Wisconsin probate court held a hearing at which Doss appeared by telephone. The court ordered Doss to pay $70,555.47 (the estate funds) to the clerk of courts. Doss did not comply with the order. Thus, the jury could reasonably infer that Doss retained possession of the funds. Accordingly, we conclude the evidence was sufficient to support the verdict.

### CONCLUSION

¶ 28. In sum, because admission of the bank records via affidavit violated both statutory procedure and Doss's constitutional right of confrontation, and

because admission of this evidence was not harmless, the trial court erred in admitting the evidence. Based on the foregoing, we reverse the judgment and order. We further conclude that the evidence was sufficient to support the verdict. So a re-trial would not violate Doss's double jeopardy rights.

*By the Court.*—Judgment and order reversed.