STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Carmen L. DOSS,
Defendant-Appellant-Cross Petitioner.

Supreme Court

*No. 2006AP2254–CR. Oral argument March 5, 2008.
—Decided July 15, 2008.*

2008 WI 93

(Also reported in 754 N.W.2d 150.)

570

575

For the plaintiff-respondent-petitioner the cause was argued by *Jeffrey J. Kassel,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

For the defendant-appellant-cross petitioner there were briefs by *Robert R. Henak* and *Henak Law Office, S.C.,* Milwaukee, and oral argument by *Robert R. Henak.*

¶ 1. LOUIS B. BUTLER, JR., J. This is a review of a published court of appeals opinion[1] reversing a judgment of conviction and order by the Milwaukee County Circuit Court, the Honorable Elsa C. Lamelas presiding, denying a defendant's postconviction motion for a new trial. Carmen Doss (Doss) appealed from a judgment of conviction finding her guilty of unlawfully retaining funds from her father's estate, in violation of Wis. Stat. § 943.20(1)(b) and (3)(c) (2003–04).[2]

¶ 2. In 2003, Doss's father passed away. At the time of his death he lived in Wisconsin, while Doss resided in Georgia. Doss retained a Milwaukee attorney to assist in the probate of the estate, which had assets of approximately $72,000.

¶ 3. While working on the probate case, the attorney learned that Doss's father's State income taxes had

---

[1] *State v. Doss,* 2007 WI App 208, 305 Wis. 2d 414, 740 N.W.2d 410.

[2] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

not been paid for over eight years. The attorney filed a tax return with the Wisconsin Department of Revenue (DOR) and sent the DOR checks totaling $39,865. Shortly thereafter, Doss contacted the DOR agent responsible for the audit of her father's taxes and persuaded the agent to hold the checks. The next day, Doss withdrew all of the money in the estate's account. When the DOR subsequently submitted the checks, they were returned unpaid because the account had been closed.

¶ 4. Doss was charged with theft as a trustee/bailee in a business setting, pursuant to Wis. Stat. § 943.20(1)(b) and (3)(c). A jury found her guilty, and Doss was sentenced to six years' imprisonment, consisting of one year of initial confinement and five years of extended supervision. Doss was also ordered to pay restitution.

¶ 5. Doss filed an appeal, arguing that certain bank records should not have been allowed into evidence and that the evidence was insufficient to prove a crime was committed. The court of appeals found that admission of the bank records via affidavits of bank officials violated both statutory procedure and Doss's constitutional right of confrontation. The court also concluded that the evidence was sufficient to support the verdict. *State v. Doss,* 2007 WI App 208, ¶ 28, 305 Wis. 2d 414, 740 N.W.2d 410. The court of appeals reversed the judgment of conviction and the order denying Doss's postconviction motion.[3]

¶ 6. On review, we conclude that the circuit court did not commit either statutory or constitutional error in admitting the bank records at issue, and that there

---

[3] As a result, the court of appeals declined to reach five additional issues raised by Doss. *Doss,* 305 Wis. 2d 414, ¶ 22 n.3.

was sufficient evidence in this case to sustain a conviction. We further conclude that the prosecutor did not violate a court order excluding evidence of the DOR complaint; that evidence of the DOR lawsuit against Doss was not irrelevant and unfairly prejudicial; that Doss waived her challenge that the prosecutor did not improperly comment upon Doss's lack of testimony; that reversal in the interest of justice is not appropriate; and that the circuit court did not erroneously deny Doss's postconviction ineffective assistance of counsel motion. We therefore reverse the decision of the court of appeals.

I

¶ 7. Carmen Doss's father died on August 14, 2003. At the time of his death, Doss's father resided in Wisconsin, and Doss resided in Georgia. Diane Loftus, a Milwaukee attorney, was retained to assist Doss in probating the estate, and she and Doss were named as co-personal representatives. The assets of the estate, totaling approximately $72,000, were deposited into an account at M&I Bank under the joint control of Loftus and Doss.

¶ 8. In the process of trying to finalize estate matters, Loftus was informed by the DOR that Doss's father had failed to pay Wisconsin income taxes for the final eight years of his life. The DOR letter, which was copied to Doss, stated that "[o]nce the above issue is satisfied (returns filed with full payment of tax liabilities), only then can a Closing Certificate . . . be issued." Doss responded by claiming that her father was not a resident of Wisconsin and therefore did not owe the Wisconsin taxes.

¶ 9. On February 6, 2004, after advising Doss of the estate's tax liability and the need to file the income

taxes, Loftus filed tax returns for 1995 to 2002 and included with the returns checks totaling $39,865.87 for taxes, interest, and late fees. However, Doss directly contacted the DOR two weeks later asking that the checks be held because, she stated, Loftus had acted without Doss's knowledge or approval.

¶ 10. On February 20, 2004, Doss then withdrew every penny of the $70,555.47 in the estate's M&I account and closed the account, telling the DOR that she had closed the account but had "every intention of satisfying [her] father's obligations to The State of Wisconsin." On March 1, 2004, Doss opened a new account with SunTrust Bank of Atlanta, Georgia, and deposited the money into that account. On March 15, 2004, after receiving a final determination from the DOR that the estate owed income taxes, Doss closed the SunTrust estate account and deposited the account's balance into her personal account. Four days later she again moved the funds, this time to a new money market account. The last communication Doss had with the DOR prior to this action was a March 26, 2004, letter in which Doss blamed the DOR for not contacting her father about the delinquent taxes and wrote that collecting the taxes at that point "just doesn't seem right."

¶ 11. While Doss was in the process of moving the funds from account to account, her attorney distanced herself from her client's actions, filing a motion to withdraw as attorney of record and to resign as co-personal representative. In the alternative, the motion requested an order directing Doss to return the estate funds. A hearing was held on Attorney Loftus's motion to withdraw on March 25, 2004. In an order dated April 1, 2004, the probate court allowed Loftus to withdraw

as co-personal representative, but did not address the request for return of the funds.

¶ 12. When the DOR submitted the eight checks for payment, they were returned because the account had been closed. The DOR subsequently filed a lawsuit, along with a motion for summary judgment on August 23, 2004, seeking repayment of the money Doss had taken. As an alternative, the motion requested an order requiring that a $52,000 bond previously issued by the Ohio Casualty Insurance Company covering the performance of Doss and Loftus as probate personal representatives be paid to the DOR. The motion also requested that a constructive trust be imposed on Doss's assets; that Loftus be reappointed as co-personal representative; and that Doss, Loftus, and Ohio Casualty be held jointly and severally liable for payment of the taxes. The same day, the DOR also filed a separate action against Ohio Casualty, Doss, Loftus and the estate seeking payment of $48,339.81 for the income taxes owed, plus interest, fees, and check return fees.

¶ 13. After receiving notice from Ohio Casualty that she could be held liable for any loss, cost or expense to Ohio Casualty associated with this matter and after DOR arranged for personal service of the lawsuit on Doss, Doss closed the SunTrust money market account and withdrew the balance in cash. Ohio Casualty filed a motion in the estate action requesting an order directing Doss to surrender the estate funds. At an October 7, 2004, hearing, Doss told the probate court that the money was simply gone. The probate court then granted Ohio Casualty's motion and ordered Doss to pay $70,555.47 to the Milwaukee County Clerk of Courts. Doss did not do so.

¶ 14. On November 23, 2004, the State filed a complaint charging Doss with one count of theft as a

trustee/bailee in a business setting, in violation of Wis. Stat. § 943.20(1)(b) and (3)(c). On October 13, 2005, a jury found her guilty. Doss was sentenced to serve a six-year prison term, consisting of one year initial confinement, followed by five years of extended supervision, and was ordered to pay restitution and costs.

¶ 15. On June 7, 2006, Doss filed a motion for postconviction relief, arguing that the court erred in admitting certified bank records and in denying a request for a mistrial, that evidence of the DOR's lawsuit was unfairly prejudicial, that the prosecutor's closing argument contained improper commentary on Doss's lack of testimony, that there was insufficient evidence to sustain a conviction, that the interest of justice required a new trial, and that she was prejudiced by ineffective assistance of counsel. On August 22, 2006, the circuit court denied her motion. Doss then filed an appeal making the same arguments that she made in her postconviction motion and that she continues to make to this court.

¶ 16. In an opinion issued on August 7, 2007, the court of appeals focused on her arguments that the circuit court erred when, on short notice to Doss, it allowed certified bank records to be entered into evidence without supporting witnesses and that the evidence was insufficient to sustain the conviction. *Doss,* 305 Wis. 2d 414, ¶¶ 9, 23. The court of appeals concluded that the circuit court erred "because admission of the bank records via affidavit violated both statutory procedure and Doss's constitutional right of confrontation, and because admission of this evidence was not harmless." *Id.,* ¶ 28. Based on that conclusion, the court reversed the judgment of conviction and the order denying Doss's motion for postconviction relief. *Id.* The court also concluded that "the evidence was sufficient to

583

support the verdict[,] [s]o a re-trial would not violate Doss's double jeopardy rights." *Id.*

¶ 17. The State filed a petition for this court to review the issue of the bank records, and Doss filed a cross-petition for review of the court of appeals' conclusion that the evidence was sufficient to support the jury's verdict. She also repeated and preserved her previous arguments raised to the court of appeals. This court granted review.

II

¶ 18. On review, we first address the issues the court of appeals found dispositive, pertaining to whether admission of the bank records via affidavits from records custodians failed to meet the statutory requirements of Wis. Stat. § 891.24 or violated Doss's constitutional right of confrontation due to being "testimonial hearsay," and whether the evidence was sufficient to support the jury's verdict. Because we disagree with the analysis and conclusions of the court of appeals on the bank records issues, we must then also address the other arguments made by Doss in this case challenging her conviction, namely: whether denial of a mistrial based on a prosecutor's alleged violation of the court's order excluding evidence of service of the DOR complaint was erroneous; whether evidence of a DOR lawsuit against Doss was irrelevant and unfairly prejudicial; whether the prosecutor's reliance upon Doss's failure to testify violated Wis. Stat. § 905.13(1) and deprived her of her constitutional rights to remain silent and to a fair trial; whether reversal is appropriate in the interest of justice; and whether the post-conviction court erred in denying Doss a hearing on her ineffectiveness of counsel motion.

¶ 19. The various issues raised in this case require us to apply several different standards of review. We will generally reverse a lower court's ruling related to the admission of evidence only upon a clear showing of erroneous use of discretion. *See State v. Franklin,* 2004 WI 38, ¶ 6, 270 Wis. 2d 271, 677 N.W.2d 276. When reviewing an evidentiary decision, the question on appeal is not whether this court would have permitted the evidence to come in, but whether the circuit court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record. *State v. Manuel,* 2005 WI 75, ¶ 24, 281 Wis. 2d 554, 697 N.W.2d 811. A proper exercise of discretion requires that the circuit court rely on facts of record, the applicable law, and, using a demonstrable rational process, reach a reasonable decision. *Id.* We review de novo whether the admission of hearsay evidence violates a defendant's constitutional confrontation rights. *Id.,* ¶ 25.

¶ 20. Whether the admission of bank records meets the statutory requirements of Wis. Stat. § 891.24 involves questions of statutory interpretation, which are reviewed de novo under the standards set forth by *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶¶ 44–51, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 21. As to sufficiency of the evidence for a conviction, a conviction should not be reversed unless the evidence, viewed most favorably to the State and to the conviction, is so insufficient as a matter of law that no reasonable trier of fact could have found guilt beyond a

reasonable doubt. *State v. Poellinger,* 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

¶ 22. This court has explained the standard for reviewing a request for a new trial in the interest of justice as follows:

> A new trial may be granted in the interest of justice when the jury findings are contrary to the great weight and clear preponderance of the evidence, even though the findings are supported by credible evidence. The order granting a new trial in the interest of justice must contain the reasons and bases for the general statement contained therein that the verdict is against the great weight and clear preponderance of the evidence.

*Krolikowski v. Chicago & Nw. Transp. Co.,* 89 Wis. 2d 573, 580, 278 N.W.2d 865 (1979)(citations omitted). *See also* Wis. Stat. § 751.06 (describing this court's discretionary reversal authority as "necessary to accomplish the ends of justice").

¶ 23. Finally, Doss's claims regarding ineffective assistance of counsel raise mixed questions of fact and law. We will not set aside the lower court's findings of fact unless they are clearly erroneous. *Manuel,* 281 Wis. 2d 554, ¶ 26. However, whether an attorney's performance is constitutionally deficient is a question of law we review de novo. *Id.*

III

¶ 24. We first address the main issues on review upon which the court of appeals decision was based. For the reasons given below, we conclude that admission of the bank records via affidavits from records custodians violated neither statutory procedure nor Doss's consti-

586

tutional right of confrontation, and that the evidence was sufficient to support the jury's verdict.

## A

¶ 25. The first primary basis of Doss's objection to the admission of the bank records in this case relates to the objection of her trial counsel that he had been advised only three days prior to trial that the records would not be introduced through the testimony of records custodian witnesses physically appearing to testify at trial, but would be introduced by affidavit. Such short notice, Doss's counsel objected, does not meet the requirements of Wis. Stat. § 891.24 that originals of the records must be open to inspection of all parties. Doss's counsel argued that "I don't have any ability to go and inspect original bank records in Georgia," although conceding that the bank records at issue were merely those of his client Doss's bank accounts, which were presumably available to her at all relevant times.

¶ 26. On appeal, Doss argues that the circuit court improperly relied upon Wis. Stat. § 891.24 as a basis for satisfying authentication and foundational requirements of bank record admissions via sworn affidavits attesting to their accuracy, repeating her trial counsel's objection that the records were not "open to the inspection of all parties," as required by the statute.

¶ 27. Wisconsin Stat. § 891.24 provides:

Whenever any bank, credit union, savings bank or savings and loan association or any of its officers are subpoenaed to produce its books containing a specified account or other specified entries, the bank, credit union, savings bank or savings and loan association may, if it so elects, produce a copy of the specified

account or other entries, verified under oath by one of its officers, stating that the books called for are the ordinary books of the bank, credit union, savings bank or savings and loan association used in the transaction of its business, that the entries copied were made therein at the dates thereof and in the usual course of business, that there are no interlineations or erasures in or among the items copied, that the books are in the custody or control of the bank, credit union, savings bank or savings and loan association, and that the officer has carefully compared the copy with the books and found it to be a correct copy of the specified account or entries. Such verified copy shall be prima facie evidence of such entries, and, when presented, no officer of the financial institution may be compelled to produce the books demanded or attend the trial or hearing, unless specially ordered so to do by the court or officer before whom it is pending; provided, that such books shall be open to the inspection of all parties to the action or proceeding.

¶ 28. The court of appeals concluded that under Wis. Stat. § 891.24, copies rather than a bank's original record books may be produced for trial, without the need for a witness to be present, if two conditions are met: (1) a sworn verification is provided attesting to the factual truth of the copied account entries presented, and (2) the original records are open for the inspection of all parties to the action. *Doss,* 305 Wis. 2d 414, ¶ 15. The court of appeals concluded that as a matter of "reasonableness" and "common sense," even though the statute does not contain a special requirement that a party give notice of intent prior to trial that it will be relying on the statute, "it can only be reasonably implied" that such notice is required in order to give the open inspection language of the statute meaning. *Id.,* ¶ 17. In this case, the court of appeals con-

cluded, the State therefore did not meet the open inspection requirement because it did not give notice that it would be relying on the statute until the Friday prior to the Monday trial. *Id.*

¶ 29. The State asks us to reverse this decision by the court of appeals on the grounds that the decision, if affirmed by this court, would create a new statutory requirement that does not exist under Wis. Stat. § 891.24. The State also argues that Doss had continuous access to the records of her bank accounts before and during the proceedings, that records from the SunTrust bank were provided to the defense seven months before trial, and that the M&I records were provided to the defense eleven days before trial. The State adds that Doss did not seek a continuance to inspect the records, and that she has never raised any challenge to the authenticity or accuracy of the disputed bank records. The State asks us to conclude that the circuit court properly exercised its discretion when it admitted copies of Doss's bank records pursuant to § 891.24.

¶ 30. It is well-established that statutory interpretation begins with the plain text of a statute so long as the statute is not ambiguous:

> "We begin with the statute's language because we assume that the legislature's intent is expressed in the words it used." [quoting *State v. Reed,* 2005 WI 53, ¶ 13, 280 Wis. 2d 68, 695 N.W.2d 315]. We refrain from interpreting statutory language in isolation and interpret the language in the context in which it is used to avoid absurd or unreasonable results. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning is plain from the language of the statute, we ordinarily stop the inquiry. *Reed,* 280 Wis. 2d 68, ¶ 13 (citation omitted).

*Robin K. v. Lamanda M.,* 2006 WI 68, ¶ 13, 291 Wis. 2d 333, 718 N.W.2d 38.

¶ 31. The interpretation of Wis. Stat. § 891.24 is a matter of first impression for Wisconsin courts. Although two older cases dating back to 1898 and 1929 address predecessor statutes, neither addresses the issue of adequate notice raised in this case. *See Peart v. Schwenker,* 200 Wis. 200, 203–04, 227 N.W. 945 (1929); *Kuenster v. Woodhouse,* 101 Wis. 216, 220, 77 N.W. 165 (1898).

¶ 32. We agree with the State's analysis for several reasons. First, the plain text of Wis. Stat. § 891.24, quite simply, does not contain the notice requirement that Doss asks us to recognize. The statute's language requiring bank books to be made open to the inspection of parties does not on its face require prior notice of their use at trial to be given. It requires that the books be open to the inspection of all parties to the action or proceeding.

¶ 33. Second, we interpret statutory language "in relation to the language of surrounding or closely-related statutes . . . to avoid absurd or unreasonable results," *Kalal,* 271 Wis. 2d 633, ¶ 46. In this case, a comparable closely related statute which was not in force at the time this action commenced but which is relevant for sake of comparison is Wis. Stat. § 909.02(12)(2005–06). Section 909.02(12) requires that self-authenticating business records be accompanied by a written certification of the offering party that provides "written notice of that intention to all adverse parties and . . . make[s] the record and certification available for inspection sufficiently in advance of the offer of the record and certification into evidence to

provide an adverse party with a fair opportunity to challenge the record and certification." The plain text of § 909.02(12), unlike Wis. Stat. § 891.24, does contain a notice requirement, helping to illustrate that if the legislature meant to impose a similar notice requirement in § 891.24, it could have done so.

¶ 34. Third, we do not see a bright-line rule requiring advance notice as being implicit within the statute's requirement that bank records be open to the inspection of the parties. We conclude that the three days' notice Doss received was reasonable given that the Georgia records had been provided to her seven months before trial, and given that the Wisconsin records had been provided to her eleven days before trial. Furthermore, because the bank records in this case were those of Doss's accounts, Doss presumably already had access to inspect them both prior to and during this action. As such, we conclude that the records were open to inspection by Doss prior to the trial, as § 891.24 requires.

¶ 35. Consequently, we reject Doss's argument and the court of appeals' conclusion that the admission of the bank records in this case as authenticated through custodians' certifications did not satisfy the requirements of Wis. Stat. § 891.24.

B

¶ 36. The second primary basis of the objection made by Doss's trial counsel to the admission of the bank records in this case was that "I can't cross-examine a verification statement." Elaborating upon the objection, Doss's attorney argued that the bank records should be excluded due to the lack of authenticating

591

testimony beyond mere affidavits, which Doss considers to be testimonial hearsay implicating her Confrontation Clause rights.

¶ 37. The circuit court denied the objection and allowed the bank records to be admitted, after concluding that the leading federal and state case law on the issue—*Crawford v. Washington*, 541 U.S. 36 (2004), and *Manuel*, 281 Wis. 2d 554—did not preclude admission of the records. The circuit court quoted at length from *Crawford*'s discussion of the purpose of the Confrontation Clause as being to ensure that civil hearsay rules do not undermine constitutional protections of those criminally accused to cross-examine testimony against them, and addressed a passage from *Crawford* in which the Court explained that the Constitution's drafters intended to limit Confrontation Clause exceptions to those that existed at the time of founding. *See Crawford*, 541 U.S. at 50–54. The circuit court in this case emphasized the language in *Crawford* that "there is scant evidence that exceptions were invoked to admit *testimonial* statements against the accused in a *criminal* case." *Id.* at 56 (emphasis in original). Most pertinently, as emphasized by the circuit court, the *Crawford* court added, "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, *business records* or statements in furtherance of a conspiracy." *Id.* (emphasis added).

¶ 38. The circuit court then turned to this court's *Manuel* opinion, which indicated that business records are nontestimonial. *See Manuel*, 281 Wis. 2d 554, ¶ 38 n.9. The circuit court concluded:

> It appears then that the records that the state seeks to introduce are under *Crawford*, itself, and under the approach taken by the Wisconsin Supreme

Court in *State [v.] Manuel* nontestimonial statements. There is no confrontation clause problem.

These are records that have extraordinary, extraordinary guarantees of trustworthiness; and I think they should be admitted.

¶ 39. On appeal, Doss clarifies that her objection is primarily to the affidavits underlying the bank records, arguing that the affidavits necessary for the admission of the bank records were " 'testimonial' and thus violated *Crawford*." The court of appeals agreed that the circuit court's admission of the bank records as authenticated by affidavits Doss could not cross-examine violated her constitutional Confrontation Clause rights.[4] *Doss,* 305 Wis. 2d 414, ¶ 20.

¶ 40. Specifically, Doss argues that under *Crawford,* her constitutional rights were violated as a result of the circuit court allowing the State to rely on affidavits to authenticate the bank records. She argues that the affidavits meet *Crawford*'s description of "testimonial hearsay" as including pre-trial statements me-

_____

[4] Doss's constitutional arguments implicate the parallel provision of the Sixth Amendment to the United States Constitution, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him," and Article I, Section 7 of the Wisconsin Constitution, which provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face." We have previously explained that "[g]enerally, we apply United States Supreme Court precedents when interpreting the right of confrontation contained in our constitution." *State v. Manuel,* 2005 WI 75, ¶ 36 n.8, 281 Wis. 2d 554, 697 N.W.2d 811. *See also State v. Hale,* 2005 WI 7, ¶ 43, 277 Wis. 2d 593, 691 N.W.2d 637. Consequently, our references to the Confrontation Clause incorporate both the federal and state constitutional provisions.

morialized in an affidavit that declarants may expect to be used at trial in a prosecutorial manner. Doss concludes that, given the testimonial nature of the disputed records, the State did not produce required evidence of unavailability of the declarants who signed the affidavit, nor did it provide a prior opportunity for Doss to cross-examine them, thereby rendering the affidavits' admission erroneous.

¶ 41. The State responds that such requirements do not apply to nontestimonial evidence, and that *Crawford's* recognition of business records as nontestimonial logically extends to affidavits authenticating nontestimonial bank records, which are therefore not testimonial or in violation of the Confrontation Clause. The State describes the court of appeals' approach as overly mechanistic in its determination of whether the affidavits constituted testimonial hearsay under *Crawford* because a Confrontation Clause analysis should entail a consideration of the nature of the affidavits in relation to the Confrontation Clause's purpose. Other courts, the State argues, have remained faithful to the meaning and purpose of the Confrontation Clause in their holdings that authenticating affidavits are not the accusatory hearsay statements targeted in *Crawford,* and the State suggests that this court should conclude the same.

¶ 42. We agree that the affidavits in this case do not constitute "testimonial hearsay" under the Confrontation Clause. As the circuit court correctly observed, both federal and state supreme court decisions support the conclusion that the affidavits in this case are nontestimonial for Confrontation Clause purposes.

¶ 43. *Crawford* establishes constitutional requirements for the admissibility of testimonial hearsay, and echoes the Supreme Court's recognition in *Ohio v.*

*Roberts,* 448 U.S. 56 (1980), that the Confrontation Clause was intended to incorporate longstanding business records admissibility exceptions.[5] *Crawford,* 541 U.S. at 53–56. The decision also generally explains that the Confrontation Clause should be interpreted with an eye toward its historic context focused on testimonial statements by witnesses giving testimonial evidence against the accused. *Id.* at 62–67. The *Crawford* Court declined to provide a more specific or comprehensive definition of "testimonial." The Court instead noted that testimony is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact," *Crawford,* 541 U.S. at 51 (citation omitted), and listed three general formulations of testimonial statement classes:

---

[5] Prior to *Crawford,* the test applied by the Supreme Court to determine admissibility in Confrontation Clause cases was *Ohio v. Roberts,* 448 U.S. 56 (1980), *abrogated on other grounds by Crawford v. Washington,* 541 U.S. 36 (2004). The *Roberts* two-prong test was unavailability coupled with an "indicia of reliability," defined as evidence that "falls within a firmly rooted hearsay exception," or has a "particularized guarantee of trustworthiness." *Roberts,* 448 U.S. at 66. Consequently, business records were identified by *Roberts* as a type of hearsay exception evidence that may be admissible without a Confrontation Clause violation. *See id.* at 66 n.8 (quoting Comment, *Hearsay, The Confrontation Guarantee and Related Problems,* 30 La. L. Rev. 651, 668 (1970)("Properly administered the business and public records exceptions would seem to be among the safest of the hearsay exceptions. . . .")). Although the Supreme Court in *Crawford* abrogated *Roberts* on other grounds by replacing the "indicia of reliability" factor (for surviving a Confrontation Clause challenge once evidence is concluded to be testimonial) with the prior opportunity for cross-examination factor, it left intact *Roberts'* conclusion that business records specifically are nontestimonial.

[1] "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," ... [2] "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," [and] [3] "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Id.* at 51–52 (citations omitted). The Court explained that these three formulations possess the "closest kinship to the abuses at which the Confrontation Clause was directed." *Id.* at 68. "Whatever else the term [testimonial] covers," the Court added, "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* The Court explained that the common theme of the three formulations, and the core of the Confrontation Clause, are aimed specifically at the use of ex parte examinations as evidence against the criminally accused. *Id.* at 50–51.

¶ 44. In contrast, the Court listed examples of things that are not testimonial. *Id.* at 51–56. As the circuit court in the present case correctly observed, the list of nontestimonial evidence specifically includes business records,[6] and this court explicitly adopted the

---

[6] The Wisconsin Rules of Evidence do not include a specific hearsay exception for "business records," but rather a more general exception for "records of regularly conducted activity." *See* Wis. Stat. § 908.03(6). *See also* 7 Daniel D. Blinka, *Wisconsin Evidence* § 803.6, at 621 (2d ed. 2001) ("It is somewhat misleading to characterize [Wis. Stat.] § 908.03(6) as a 'business

rule that business records are nontestimonial in *Manuel,* 281 Wis. 2d 554, ¶ 38 n.9. In *Manuel,* while saving for another day a more complete articulation of our own approach to defining "testimonial" evidence, we also concluded that "at a minimum, we adopt all three of *Crawford*'s formulations." *Id.,* ¶ 39.

¶ 45. The parties do not dispute that the circuit court correctly described *Crawford* and *Manuel* as identifying business records as nontestimonial, and correctly concluded that the specific bank records in this case are nontestimonial business records and not a threat to Doss's Confrontation Clause rights. The issue in this case is whether the affidavits authenticating the bank records are similarly benign nontestimonial evidence.

¶ 46. We conclude that affidavits verifying nontestimonial bank records in compliance with Wis. Stat. § 891.24 are also nontestimonial. Such affidavits are generally of a different nature than inculpatory testimony against an accused criminal defendant.

¶ 47. The critical defining element of the affidavits accompanying the bank records in this case is that they fulfill a statutory procedure for verifying nontestimonial bank records and do not supply substantive evidence of guilt. The affidavits in this case are not the type of affidavits described in *Crawford,* i.e., the functional equivalent of ex parte in-court testimony that declarants "would reasonably expect to be used prosecutorially." *Crawford,* 541 U.S. at 51. In certifying the

records exception'; the rule extends without limitation to the records of any 'regularly conducted activity.' . . . The broad approach exhibited by the Wisconsin rule should be contrasted with the reach of [Rule] 803 [of the Federal Rules of Evidence], which applies to 'regularly conducted business activity.' ")(footnote omitted).

authenticity of bank records in the manner set forth by Wis. Stat. § 891.24, the affidavits themselves neither provide inculpatory evidence incriminating Doss nor threaten her Confrontation Clause rights, in contrast with the type of evidence described in *Crawford*. As long as Wis. Stat. § 891.24 is complied with, the affidavits are not testimonial and their admission did not violate Doss's Confrontation Clause rights.[7]

¶ 48. Doss maintains that this court has never interpreted *Crawford* to categorize affidavits created for court use as nontestimonial. However, the opposite is true as well; this court has never interpreted *Crawford* to categorize affidavits such as those in this case as testimonial hearsay either. None of the Wisconsin cases cited by Doss—*State v. Nelis,* 2007 WI 58, 300 Wis. 2d. 415, 733 N.W.2d 619; *State v. Jensen,* 2007 WI 26, 299 Wis. 2d 267, 727 N.W.2d 518; *Manuel,* 281 Wis. 2d 554; *State v. Stuart,* 2005 WI 47, 279 Wis. 2d 659, 695 N.W.2d 259; *State v. Hale,* 2005 WI 7, 277 Wis. 2d 593, 691 N.W.2d 637—hold that affidavits authenticating bank records are testimonial hearsay.

¶ 49. Doss cites cases from other jurisdictions interpreting *Crawford* as rendering various types of evidence as testimonial hearsay, including affidavits or certifications of business records under Federal Rules of Evidence 902(11), of chain of custody of a blood draw, of state police lab reports, of breathalyzers, and of revo-

---

[7] We do not address the Sixth Amendment implications of any affidavit not produced in compliance with Wis. Stat. § 891.24.

We also do not rule on the admissibility of an affidavit on evidentiary grounds where there is a dispute about the authenticity of the record itself that implicates the foundational aspect of the evidence, or the accuracy or reliability of the substantive information in the records.

cation of driving privileges and notice of revocation. *See Shiver v. State,* 900 So.2d 615 (Fla. App. 2005); *United States v. Wittig,* 2005 WL 122790 (D. Kan. 2005); *City of Las Vegas v. Walsh,* 124 P.3d 203, 207–08 (Nev. 2005); *State v. Kent,* 918 A.2d 626 (N.J. Super. 2007); *People v. Pacer,* 847 N.E.2d 1149 (N.Y. 2006).

¶ 50. However, *Wittig* is the only case cited by Doss involving certificates authenticating business records, and it is an unpublished federal district court opinion. In contrast, there are a number of federal appellate decisions that have addressed this issue, and concluded that similar affidavits and certifications are nontestimonial.

¶ 51. For example, in *United States v. Adefehinti,* 510 F.3d 319 (D.C. Cir. 2007), the D.C. Circuit was faced with parallel facts to those in this case, and determined that written certificates authenticating nontestimonial bank records in compliance with Fed. R. Evid. Rule 902(11) were not testimonial for purposes of a Confrontation Clause analysis. The written certificates presented to authenticate bank records in *Adefehinti* were used for the sole purpose of facilitating the admission of nontestimonial bank records, the court explained in rejecting the defendant's argument that the certificates were "solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact" and therefore affidavits fitting within *Crawford's* description of testimonial hearsay. *Id.* at 327 (quoting *Crawford,* 541 U.S. at 51–52).

¶ 52. In *United States v. Ellis,* 460 F.3d 920, 927 (7th Cir. 2006), a case followed and quoted by *Adefehinti,* the Seventh Circuit ruled that a certification of medical records pursuant to Federal Rule of Evidence 902(11) was nontestimonial hearsay under *Crawford* due to *Crawford's* identification of business records as

nontestimonial evidence, even though the records had been prepared for use in litigation. The court explained, "[g]iven the records themselves do not fall within the constitutional guarantee provided by the Confrontation Clause, it would be odd to hold that the foundational evidence authenticating the records do[es]." *Ellis,* 460 F.3d at 927. The court concluded that because the certification records did not contain information about the defendant, but merely established foundation for the original records, they were nontestimonial. *Id.*

¶ 53. The Ninth Circuit has similarly concluded that "a routine certification by the custodian of a domestic public record" is not testimonial in nature. *United States v. Weiland,* 420 F.3d 1062, 1077 (9th Cir. 2005). *Weiland* involved certification of federal conviction records made by state officials and described by the court as "routine cataloguing of an unambiguous factual matter." *Id.* (citations omitted). The court noted that requiring these officials to make themselves available for cross-examination would be a "logistical challenge 'without any apparent gain in the truth-seeking process,' " and declined to interpret *Crawford* to the contrary. *Id. See also United States v. Cervantes-Flores,* 421 F.3d 825, 832–34 (9th Cir. 2005)(another Ninth Circuit decision addressing the same issue in a different context, in which the court held that a certificate that a record the Immigration and Naturalization Service would normally keep in the regular course of their business did not exist in that case was also nontestimonial under *Crawford*).

¶ 54. Similarly, a Fifth Circuit case involving the authentication of bank records, *United States v. Morgan,* 505 F.3d 332 (5th Cir. 2007), cites both *Ellis* and *Weiland* in similarly concluding "that *Crawford* does not apply to the foundational evidence authenticating

business records in preliminary determinations of the admissibility of evidence." *Morgan*, 505 F.3d at 338–39.

¶ 55. We agree with the approach taken by the federal appeals courts. We similarly conclude that as long as Wis. Stat. § 891.24 is complied with, a bank record custodian's affidavit prepared for litigation is a certification of authenticity for foundational purposes only, falls under *Crawford*'s business record exception and is not "testimonial" for purposes of the Confrontation Clause.

¶ 56. For all the above reasons, we hold, consistently with the federal appellate courts that have addressed this issue, that the routine certifications in the form of affidavits from record custodians authenticating the nontestimonial bank records in compliance with Wis. Stat. § 891.24 in this case are not testimonial. Therefore, the admission of such affidavits along with the underlying bank records in this case did not violate Doss's constitutional confrontation rights.

## C

¶ 57. Next, we address Doss's argument that there was insufficient evidence to support her conviction under Wisconsin Statute § 943.20(1)(b). Doss correctly recites the elements the State was required to establish to obtain a conviction: that (1) she had possession of money as a result of her position as a personal representative of her father's estate; (2) she initially retained possession of the money contrary to her authority and without the owner's consent; (3) she knew that retention of the money was contrary to her authority and without the owner's consent; and (4) she intended to convert the money to her own. *See* Wis

JI—Criminal 1444 & Comment n.1; *State v. Blaisdell,* 85 Wis. 2d 172, 176, 270 N.W.2d 69 (1978).

¶ 58. Without contesting that the State established these main elements, Doss claims that the State failed to establish a more specific aspect of its case: that the date Doss retained the funds was on or about October 31, 2004. Doss concedes that the evidence may indicate that she possessed the funds when she withdrew them from the Georgia account on September 15, 2004, but argues that the State failed to produce evidence that she still had the funds more than a month later.

¶ 59. Doss also argues that there was insufficient evidence of her intent to convert the estate funds to her own. She notes that at trial, the State argued that the evidence established that if there was conversion, it had taken place either on February 20, 2004, when the funds were mailed to Doss in Georgia, or on March 1, 2004, when she withdrew the bulk of the funds from the Georgia estate account. Therefore, Doss concludes, because any conversion would have been completed nine months before the alleged retention, the jury could not reasonably find that Doss's possession of the funds on or about October 31, 2004, was in her role as personal representative or with the intent to convert. Finally, Doss asserts that any failure to comply with the order to return funds "long-since stolen" does not equate to committing the crime of "retention of funds lawfully in one's possession with intent to convert."

¶ 60. The State responds by approvingly citing the court of appeals' conclusion that "the jury could reasonably infer that Doss retained possession of the funds" when Doss withdrew estate funds on September 15, 2004, and then appeared via telephone in October of 2004, at which time the probate court ordered her to

pay back $70,555.47, and she failed to do so. The State argues that a jury could reasonably infer that in October, Doss still had at least $10,000 of the $52,000 September 15 withdrawal, and that the jury was not required to believe Doss's October 7 statement to the probate court that she no longer had the funds. Moreover, the State asserts that it was not required to prove that the offense was committed on a specific date.

¶ 61. As to Doss's claim that there was insufficient evidence of her motive and intent to hide the funds, the State points to the notice sent by Ohio Casualty to Doss two days after the DOR suit was filed in which Ohio Casualty informed Doss that they had received notice that she was responsible for the taxes due by the estate, and asked her to correct the deficiency. The State argues that the jury was entitled to infer from that evidence that Doss knew there were other claims on the funds she withdrew, and that she therefore intended to conceal the funds from the other claimants. The State argues that Doss's intent to convert the funds was demonstrated by her writing a check to herself for "inheritance" from the estate account in an amount that far exceeded the amount to which she was entitled, even if no taxes had been due, and her failure to comply with the probate court's order to return the funds.

¶ 62. A criminal conviction can be based in whole or in part on circumstantial evidence. *State v. Koller,* 87 Wis. 2d 253, 266, 274 N.W.2d 651 (1979). In particular, the intent to defraud that must be established for a conviction under Wis. Stat. § 943.20(1)(b) may be proven circumstantially and inferred from a defendant's conduct. *Tri-Tech Corp. of Am. v. Americomp Servs., Inc.,* 2002 WI 88, ¶ 28, 254 Wis. 2d 418,

646 N.W.2d 822. This case fits squarely within such a scenario described by *Tri-Tech Corp. of America,* in which this court explained that "[i]ndeed, the statute itself sets forth one acceptable method of proof: a defendant's refusal to pay a claim upon demand to one entitled to be paid out of trust funds is prima facie evidence of the defendant's intent to convert the trust funds to his own use." *Id.*

¶ 63. In this case, the evidence creates abundant reasonable inferences supplementing the direct evidence of the required elements in this case. *See State v. Fonte,* 2005 WI 77, ¶ 19, 281 Wis. 2d 654, 698 N.W.2d 594 ("In evaluating the evidence, we give all reasonable inferences to it that will support the verdict.").

¶ 64. We are in accord with the conclusion of the court of appeals that:

> [t]here was evidence in the record from which a jury could reasonably infer all the elements of the crime charged. Doss withdrew all of the money from the M&I estate account and opened a SunTrust account with the estate money. The record reflects that Doss withdrew the funds from the SunTrust account on September 15, 2004. In October, 2004, the Wisconsin probate court held a hearing at which Doss appeared by telephone. The court ordered Doss to pay $70,555.47 (the estate funds) to the clerk of courts. Doss did not comply with the order. Thus, the jury could reasonably infer that Doss retained possession of the funds. Accordingly, we conclude the evidence was sufficient to support the verdict.

*Doss,* 305 Wis. 2d 414, ¶ 27. We also note that the money obtained by Doss from the estate account was never returned to the estate account. We conclude that Doss has failed to establish that the evidence, viewed

most favorably to the State, was so insufficient as a matter of law that no reasonable trier of fact could have found guilt beyond a reasonable doubt. *See Tri-Tech Corp. of Am.*, 254 Wis. 2d 418, ¶ 28; *Poellinger,* 153 Wis. 2d at 501.

## IV

¶ 65. We next address the remaining issues raised by Doss. For the reasons given below, we conclude that the circuit court did not commit reversible error in denying Doss's mistrial request related to evidence of service of the DOR complaint; that the evidence of the DOR lawsuit was not irrelevant and unfairly prejudicial; and that the prosecutor did not improperly rely upon Doss's failure to testify in violation of Wis. Stat. § 905.13(1) and her constitutional rights to silence and to a fair trial. In addition, we are not persuaded by Doss's arguments that we should reverse this case in the interest of justice, that the controversy was not fully tried, and that the post-conviction court erred in denying Doss a hearing on her ineffectiveness of counsel motion.

## A

¶ 66. Doss contends that the circuit court improperly admitted DOR Attorney John Evans' testimony that he contracted with a process serving agency to serve the DOR's complaint on Doss, and that he sent the complaint out for service on August 24, 2004. Doss argues that this evidence should have been excluded because it proved only that the papers were sent out, not that she actually received service of process. She maintains that proof of service was necessary to establish that she knew of the lawsuit and therefore had a

motive to abscond with the estate funds. Absent this proof, she argues, evidence of the lawsuit is not only irrelevant, but also prejudicial.

¶ 67. However, Doss would not have us allow admission of such actual service evidence either. She argues that not only was Evans' testimony regarding service of the DOR lawsuit irrelevant and prejudicial, but it also violated the trial judge's order prohibiting the State from introducing an affidavit from the process server attesting to the fact that Doss had been served. On the first day of the trial, the circuit court ruled that the State could not introduce this affidavit, concluding that it was testimonial under *Manuel*. Although the State did not introduce the actual affidavit, Doss argues that the State's elicitation of testimony from Evans about his contract with the process serving agency essentially served the same purpose as the affidavit, and therefore violated the circuit court's order.

¶ 68. The State points out that not only did the State never introduce the affidavit, but the circuit court sustained Doss's objection and ordered the answer stricken when the prosecutor asked Evans whether he received confirmation of service. Because the State did not attempt to introduce the affidavit of service and because the court sustained Doss's objection to Evans' testimony that he had been notified that Doss had been served, the State contends that the court acted within its discretionary authority by denying Doss's request for a mistrial.

¶ 69. Whether to grant a mistrial is a decision that lies within the sound discretion of the circuit court. *State v. Ross,* 2003 WI App 27, ¶ 47, 260 Wis. 2d 291, 659 N.W.2d 122 (citing *Haskins v. State,* 97 Wis. 2d 408, 419, 294 N.W.2d 25 (1980)). The circuit court "must

determine, in light of the whole proceeding, whether the claimed error was sufficiently prejudicial to warrant a new trial. The denial of a motion for mistrial will be reversed only on a clear showing of an erroneous use of discretion" by the circuit court. *Ross,* 260 Wis. 2d 291, ¶ 47 (citations omitted).

¶ 70. In this case, the record does not support a clear showing of an erroneous exercise of discretion by the circuit court. While Doss asserts that the circuit court's order "exclud[ed] evidence that the DOR lawsuit ever was served on Doss, or at least that the lawsuit was served on her at any time relevant to this prosecution," this is not an accurate description of the order. Rather, the circuit court expressly described its order as pertaining to the affidavit of service:

> It would seem to me that that the *Affidavit of Service* is testimonial under *Manuel* for two reasons: One, it's an affidavit; and, number 2, it's certainly conceivable that at the time that it was executed a reasonably objective person or witness might believe that the statement would be used at a trial, not necessarily this trial, but certainly at a trial. That's the reason that the Affidavit is executed.
>
> . . . .
>
> I think for now it's got to stay out. I think it's got to stay out. I think if she testifies, I think then you can properly confront her with this. I think you've got a good-faith basis upon which to do it.

(Emphasis added.) This language from the court clearly demonstrates that Doss is incorrect in asserting that the circuit court ordered that *all* evidence regarding the

DOR's service of process upon Doss be excluded. The court merely ordered that the affidavit of service not be introduced, and it was not.

¶ 71. Likewise, Doss's protestations that the circuit court denied her request for a mistrial based on an error of law are similarly misplaced. Doss suggests that the court denied her motion because it "reconsider[ed]. . . its pretrial order," pointing to the court's explanation that it sustained Doss's objection to the prosecution's question about whether Evans received confirmation of service, because in the court's view, the question "fell within the spirit of the ruling." It does not follow, as Doss seems to suggest, that because the judge sustained her objection to this question, the whole line of questioning violated the court's order. Consequently, we conclude that the circuit court acted within its discretion when it denied Doss's request for a mistrial based on the prosecutor's use of evidence regarding the service of process of the DOR complaint upon Doss.

B

¶ 72. Doss argues that it was also improper for the circuit court to admit Exhibits 13 and 14—the complaint and the application for assessment and payment of income tax and for constructive trust—because absent proof that these documents were ever served on Doss, it would be inappropriate to conclude that Doss knew of their existence. Doss maintains that the lack of evidence that she was actually served rendered evidence of the DOR lawsuit both irrelevant and unfairly prejudicial because it permitted speculation that she must have known of the lawsuit and therefore withdrew the funds with the intention of converting them. The withdrawal itself, Doss insists, did not prove either that she knew of the DOR lawsuit or that she had a bad

motive; the purpose and effect of introducing evidence of this suit, however, unfairly created that impression.

¶ 73. The circuit court permitted the State to introduce these exhibits, observing that the State did not need to prove that Doss actually received the papers, but only that it sent them out for service and that Doss later took some action that was consistent with having received them.

> I don't think it's required there be absolute proof of receipt on the part of the defendant. This is very much like someone who says they mailed a letter, and then there is some action that follows at some point after that. It's a natural inference to be drawn that the letter was received, and so I don't find the objections to 13 and 14 valid, and they are received.

Doss disagrees that the court's analogy of mailing a letter applies to the present situation, arguing that the presumption that a mailed letter was received should not apply to the delivery of documents through private couriers or agencies. She further asserts that service of the DOR's complaint cannot be inferred from her appearance at the October 7, 2004, hearing because that hearing was called in connection with the probate matter, not with the DOR lawsuit. Moreover, the fact that Ohio Casualty filed the motion requesting the hearing twelve days after Doss withdrew the funds, she argues, proves that it was logically impossible that her knowledge of this hearing provided a motive for her to close the SunTrust account.

¶ 74. The State responds that evidence of the DOR lawsuit was relevant because Doss's refusal to obey Judge Martin Joseph Donald's order to return the estate funds was evidence that she knowingly retained funds to which she was not entitled. It contends that the circuit court properly exercised its discretion in

determining that Exhibits 13 and 14, in conjunction with Doss's appearance at the October 7 hearing, constituted admissible circumstantial evidence from which the jury could infer that Doss knew about the lawsuit. The State rebuts Doss's argument that her knowledge of the October 7 hearing does not bear on her knowledge of the DOR lawsuit, pointing out that the two cases were consolidated on October 4, 2004.

¶ 75. We agree with the State. In Wisconsin, "[a]ll relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the state of Wisconsin, by statute, by these rules or by other rules adopted by the supreme court." Wis. Stat. § 904.02. However, whether such evidence should be admitted lies within the discretion of the circuit court. *State v. Pepin,* 110 Wis. 2d 431, 435, 328 N.W.2d 898 (Ct. App. 1982).

¶ 76. In this case, evidence of the DOR lawsuit is relevant because the reason the court gave Doss for its order that Doss return to the court the money she took was "so that we can address all the other issues as to whether or not the tax claim is one that is viable or that needs to be recognized." Furthermore, the impetus for Ohio Casualty's motion to surrender estate funds to the court which was the subject of the October 7, 2004, hearing was Doss's refusal to pay the taxes owed by her father's estate to the DOR. The DOR complaint named Ohio Casualty as codefendant in its suit against Doss, and the probate case and the DOR lawsuit had been consolidated and transferred to Judge Donald on October 4, 2004. Accordingly, Doss's appearance at the October 7, 2004, hearing was directly related to the

DOR lawsuit and is therefore relevant to the question of whether Doss knowingly retained funds to which she was not entitled.

¶ 77. Doss's argument that the court inappropriately analogized sending documents to a private process server with mailing a letter is not persuasive. This court need not address her argument—that *Rosenthal v. Walker,* 111 U.S. 185, 193 (1884), *Flores v. State,* 183 Wis. 2d 587, 612, 516 N.W.2d 362 (1994), and *Danielson v. Brody Seating Co.,* 71 Wis. 2d 424, 428, 238 N.W.2d 531 (1976), collectively stand for the idea that the presumption that a mailed letter was received only when it is mailed through a government entity— because this argument ignores the thrust of the circuit court's ruling. What the circuit judge said was "this is very much like someone who says they mailed a letter, *and then there is some action that follows at some point after that.* It's a natural inference to be drawn that the letter was received." (Emphasis added.) The court addressed Evans' testimony that he sent the letters out for service in conjunction with the fact that Doss later appeared at a hearing related to the estate's nonpayment of taxes as collectively creating an inference that Doss knew about the lawsuit.

¶ 78. Doss's contention that evidence of the DOR lawsuit was unfairly prejudicial is similarly unfounded. Although Wis. Stat. § 904.03 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, the only support Doss provides for her argument that evidence of the DOR lawsuit was unfairly prejudicial is that it permitted the inference that Doss's motive was to convert the funds when she withdrew them from

SunTrust. This, however, does not rise to the level of unfair prejudice under Wis. Stat. § 904.03. As the court of appeals has noted:

> " 'Unfair prejudice' does not mean damage to a party's cause since such damage will always result from the introduction of evidence contrary to the party's contentions." Rather, unfair prejudice results where the proffered evidence, if introduced, would have a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case.

*State v. Mordica,* 168 Wis. 2d 593, 605, 484 N.W.2d 352 (Ct. App. 1992) (citations omitted).

¶ 79. Thus, the fact that evidence of the DOR lawsuit may have led the jury to infer that Doss knew she had retained funds to which she was not entitled does not render the evidence unfairly prejudicial. Doss has not shown how evidence that there was a DOR tax claim outstanding against the estate would inflame a jury's sense of sympathy or horror, provoke its instinct to punish, "or otherwise cause[] a jury to base its decision on something other than the established propositions in the case." *Mordica,* 168 Wis. 2d at 605. Consequently, we conclude that Doss has failed to make a clear showing of an erroneous exercise of discretion by the circuit court in its decision to permit evidence of the DOR's lawsuit.

### C

¶ 80. We next address whether the prosecutor improperly referenced a failure by Doss to testify, thereby violating Wis. Stat. § 905.13(1) and Doss's con-

stitutional rights to silence and a fair trial as Doss contends. Doss argues that the prosecutor's comments referring to the lack of explanation or accounting for the missing funds during the State's closing argument was of such character that the jury would necessarily take it to be a comment on the fact that Doss herself had failed to testify and explain herself. Specifically, the prosecutor argued during closing, in relevant part, as follows:

> I also focus on the fact that there has been no accounting that has been uncovered in our investigation, no explanation as to where the money had gone. . . .
>
> . . . There is no evidence on this record that this money, the way in which this money was spent, and our investigation reveals only the extraordinary end point when Ms. Doss walked into a bank and walked out with $52,788.34 in cash.
>
> Who among us has ever done that? What is the explanation for that? That speaks volumes to me.
>
> . . . .
>
> . . . I myself have never heard an explanation for why we moved from the first estate account to one personal account, to a third account and second personal account in the space of just days. To me that says that there's some intent to conceal here.
>
> . . . .
>
> And a person who truly didn't have the money, but was interested in making sure that they abided by the requirements of the law would have . . . provided some sort of formal accounting to the court, which was never provided, not, and from any witness that we have heard from the witness stand. . . .

¶ 81. The State responds that Doss's claim fails for two reasons. First, it argues that to preserve an objection, Doss was obligated to "make a contemporaneous objection and move for a mistrial," *State v. Guzman,* 2001 WI App 54, ¶ 25, 241 Wis. 2d 310, 624 N.W.2d 717, but Doss failed to object. Second, the State contends that the comments did not meet the criteria set forth by the United States Supreme Court in *United States v. Robinson,* 485 U.S. 25, 34 (1988), and recognized by the Wisconsin courts as well:

> [F]or a prosecutor's comment to constitute an improper reference to a defendant's failure to testify, three factors must be present: (1) the comment must constitute a reference to the defendant's failure to testify; (2) the comment must propose that the failure to testify demonstrates guilt; and (3) the comment must not be a fair response to a defense argument.

*State v. Jaimes,* 2006 WI App 93, ¶ 21, 292 Wis. 2d 656, 715 N.W.2d 669 (citing *Robinson,* 485 U.S. at 34).

¶ 82. The State asserts that the prosecutor's comments failed to meet these requirements. The State first explains that the prosecutor's comment that "there has no explanation as to where the money has gone," was not a reference to Doss's decision not to testify, but rather to the results of the State's investigation. The State further asserts that the statement by Doss's attorney in her closing argument that Doss's behavior in depositing the estate funds showed nothing but good motives opened the door for the prosecutor to comment on the lack of explanation for Doss's movement of the funds. The State argues that the prosecutor's statement that he did not "believe that somebody who walks into a bank and takes out $52,000 doesn't have that money some 16 business days later" does not violate the

614

*Robinson* standards because the comment was a reference to the lack of evidence in general, not a reference to Doss's failure to testify. The State additionally points out that defense counsel did not object to this statement.

¶ 83. In this case, there was no objection made by Doss's counsel. Therefore, we agree with the State that Doss waived this issue. Not only did her attorney fail to object to the prosecutor's closing statement, but in addition, no cautionary or curative instruction was sought. This prevented the circuit court from having the opportunity to correct any alleged error. *See Guzman,* 241 Wis. 2d 310, ¶ 25. As such, Doss in essence conceded at trial that the commentary did not cross the line to such a degree that her constitutional rights were substantially infringed, requiring a curative instruction, let alone reversal.

## D

¶ 84. We further reject Doss's more general argument that this court should reverse her conviction in the interest of justice, and her related ineffective assistance of counsel claim. Doss claims that reversal is justified under Wis. Stat. § 751.06 because the jury was confronted with "evidence not properly admitted which so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried," citing *State v. Hicks,* 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996).

¶ 85. Wisconsin Stat. § 751.06 provides:

> In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment

615

or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

¶ 86. While this court possesses the discretionary authority under Wis. Stat. § 751.06 to reverse a conviction in the interest of justice if the real controversy was not fully tried, we do so "only in exceptional cases." *Hicks,* 202 Wis. 2d at 161. Such exceptional cases are generally limited to cases in which the jury was erroneously denied the opportunity to hear important testimony bearing on an important issue of the case, when the jury had before it evidence not properly admitted that "so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried," *id.* at 160, or when an erroneous instruction prevented the real controversy in a case from being tried. *State v. Bannister,* 2007 WI 86, ¶ 41, 302 Wis. 2d 158, 734 N.W.2d 892. This is not such a case.

¶ 87. Doss does not contend that the jury was denied the opportunity to hear important testimony, and we have already rejected Doss's claims of erroneously admitted evidence and improper closing argument. Combining these arguments does not transform them into meritorious arguments. *Mentek v. State,* 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976).

¶ 88. Doss offers an alternative basis for concluding that the real controversy was not fully tried; she argues that the court improperly failed to instruct the jury to determine who the owner of the funds was at the time of the alleged theft, suggesting that Doss herself

was the owner of the funds she stole. She makes the argument that "fundamental principles of probate law" establish that she was the owner of the funds, rather than the estate, citing Wis. Stat. § 857.01[8] and a series of cases including *Peters v. Kell,* 12 Wis. 2d 32, 41, 106 N.W.2d 407 (1960); *Krause v. Krause,* 240 Wis. 72, 75–76, 2 N.W.2d 733 (1942); *Schoenwetter v. Schoenwetter,* 164 Wis. 131, 134, 159 N.W.2d 737 (1916).

¶ 89. Wisconsin's theft statute, Wis. Stat. § 943.20(1)(b), does not require that the owner be named in the jury instruction. As long as the jury concludes that the money Doss moved and refused to turn over upon being ordered to do so did not belong to her, its conclusion encompasses the necessary finding that Doss was not the owner of the money; the jury is not required to additionally identify beyond that who the owner is. When this issue arose at the circuit court level, the court concluded that Doss "seeks to exploit the nuances of ownership in a probate estate in order to nullify the consequences of her theft of property that was not hers." We agree with the State that even if Doss held title to the estate assets as a personal representative, nothing justified her refusal to return those funds to the clerk when ordered to do so by the probate court. We therefore conclude that the jury was properly instructed on this point.

---

[8] Wisconsin Stat. § 857.01 provides:

Upon his or her letters being issued by the court, the personal representative succeeds to the interest of the decedent in all property of the decedent. . . . With regard to property subject to the election of the surviving spouse under s. 861.02, the personal representative may manage and control the property while the property is subject to administration. The personal representative shall determine when, during administration, property shall be distributed to satisfy an election under s. 861.02.

¶ 90. As to Doss's claim that she received ineffective assistance of counsel because her attorney failed to object to the prosecutor's alleged prohibited comments on her failure to testify, and failed to object to the other claimed errors she describes in her other claims regarding the bank records and DOR lawsuit evidence, each of these ineffective assistance arguments similarly incorporates previous arguments we have already rejected. To make a successful ineffective assistance of counsel claim, the defendant must show that counsel's representation fell below an objective standard of reasonableness and that the counsel's deficient performance prejudiced his or her defense. *State v. Johnson,* 133 Wis. 2d 207, 217, 395 N.W.2d 176 (1986); *Strickland v. Washington,* 466 U.S. 668, 678–88 (1984).

¶ 91. In reference to the majority of Doss's claims, for all the reasons we have already discussed, Doss fails to establish how her counsel's performance failed to adhere to an objective standard of reasonableness. As to the one issue that we resolved on waiver grounds rather than on its merits, whether the prosecutor's closing argument contained improper commentary on Doss's lack of testimony, Doss fails to make the case that the closing argument rose to the level of the type of impermissible commentary upon Doss's silence as to warrant an objection from counsel.

¶ 92. We have previously declined to establish a bright-line test as to "whether a prosecutorial comment crosses over 'into the forbidden area of comment on an accused's failure to testify' and 'violates constitutional rights,' " *State v. Moeck,* 2005 WI 57, ¶ 74, 280 Wis. 2d 277, 695 N.W.2d 783 (citing *State v. Edwardsen,* 146 Wis. 2d 198, 215, 430 N.W.2d 604 (Ct. App. 1988)).

Instead, such determinations must be made on a case-by-case basis. *Moeck,* 280 Wis. 2d 277, ¶ 74.

¶ 93. The court of appeals has adopted the approach taken by the Third Circuit that "[t]he test for determining whether remarks are directed to a defendant's failure to testify is 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' Questions about the absence of facts in the record need not be taken as a comment on a defendant's failure to testify." *State v. Johnson,* 121 Wis. 2d 237, 246, 358 N.W.2d 824 (Ct. App. 1984)(citations omitted). Applying this test, the court of appeals has ruled that by presenting a limited reply to a defendant's claim during a pro se trial that the state was unable to prove its case, the prosecutor did not improperly comment on the defendant's failure to testify. *Id.*; *See also State v. Werlein,* 136 Wis. 2d 445, 457, 401 N.W.2d 848 (Ct. App. 1987)([T]he prosecutor's comments were made in rebuttal to defense counsel's suggestion that these were legitimate explanations for the events leading to the shooting.").

¶ 94. Thus, where Doss's attorney argued that Doss's behavior in depositing the estate funds showed nothing but good motives, it is not clear that the prosecutor's statements about the absence of facts in the record should be taken as a comment on Doss's failure to testify, particularly where there was no direct reference to Doss's failure to testify. This is the type of case that straddles a fine line between permissible and impermissible commentary by the State. The U.S. Supreme Court has recognized that a prosecutor's statement that falls short of a direct statement on a

619

defendant's failure to testify, but instead " 'refers to testimony as uncontradicted where the defendant has elected not to testify and when he is the only person able to dispute the testimony,' " is at most an attenuated violation of *Griffin v. California,* 380 U.S. 609 (1965), and *Robinson,* 485 U.S. at 34, and may not actually constitute a violation at all. *United States v. Hasting,* 461 U.S. 499, 503, 506 & n.4 (1983). Therefore, Doss has not established that her counsel's failure to object was deficient performance. *See Johnson,* 133 Wis. 2d at 217; *Strickland,* 466 U.S. at 688.

## V

¶ 95. In sum, we conclude that the circuit court did not commit either statutory or constitutional error in admitting the bank records at issue, and that there was sufficient evidence in this case to sustain a conviction. We further conclude that the prosecutor did not violate a court order excluding evidence of the DOR complaint; that evidence of the DOR lawsuit against Doss was not irrelevant and unfairly prejudicial; that Doss waived her challenge that the prosecutor did not improperly comment upon Doss's lack of testimony; that reversal in the interest of justice is not appropriate; and that the circuit court did not erroneously deny Doss's postconviction ineffective assistance of counsel motion. We therefore reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.